UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA L. OSBURN, | No. 2:12-cv-2875 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XIV of the Social Security Act ("the Act"). The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and will grant defendant's motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on October 16, 2009, alleging disability beginning January 1, 1993. Administrative Record ("AR") 122-28. Her claim was denied initially on January 12, 2010, and again upon reconsideration on April 22, 2010. AR 71-72. On February 24, 2011, a hearing was held before administrative law judge ("ALJ") Timothy S. Snelling. AR 24-4. Plaintiff appeared with an attorney representing her at the hearing, at which plaintiff and Diana

Henry, plaintiff's mother, testified. In a decision dated June 17, 2011, the ALJ determined that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] AR 11-24. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since October 16, 2009, the application date.
>
> 2. The claimant has the following severe impairments: Borderline Intellectual Functioning, Anxiety, Depression, and Adjustment Disorder with Disturbance of Mood Secondary to the Anxiety Cluster.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot understand, remember, and carry out complex or detailed job instructions or job tasks and can have no more than occasional interaction with the general public.

5. The claimant has no past relevant work.

6. The claimant was born on November 24, 1986 and was 22 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 16, 2009, the date the application was filed.

AR 13-18.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on September 27, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-6.

## FACTUAL BACKGROUND

Born on November 24, 1986, plaintiff was 6 years old on the alleged onset date of disability, and 22 years old at the time of the administrative hearing. Plaintiff did not graduate from high school, AR 28, and has no past relevant work experience, AR 31. She lives at home with her mother and her mother's roommate. AR 124. She receives $200 in food stamps every month, which she uses to buy food. Id.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were

3

applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

In her moving papers, plaintiff asserts that the ALJ committed reversible error twice: first, by failing to credit the opinion of her examining psychologist, and second, by failing to properly characterize and credit a third-party statement submitted by plaintiff's grandmother. The Commissioner, in turn, argues that the ALJ's decision is supported by substantial evidence and that the ALJ did not err in his analysis.

A. <u>The ALJ's Decision</u>

At the second step of the sequential evaluation process, the ALJ determined that plaintiff has the following severe impairments: Borderline Intellectual Functioning, Anxiety, Depression, and Adjustment Disorder with Disturbance of Mood Secondary to the Anxiety Cluster. AR 13. At the third step of the sequential evaluation process, the ALJ determined that none of plaintiff's impairments, alone or in combination, meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, appendix 1. Upon examination of the record, the ALJ concluded that plaintiff has the residual functional capacity to perform a wide range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot understand, remember, and carry out complex or detailed job instructions or job tasks and can have no more than occasional interaction with the general public. The ALJ then determined that plaintiff, with such limitations, was able to perform unskilled jobs existing in significant numbers in the national economy. The court has reviewed the record and finds the ALJ's decision to be supported by substantial evidence.

B. <u>Plaintiff's Motion for Summary Judgment</u>

    1. <u>Opinion of Examining Psychologist</u>

In her moving papers, plaintiff first argues that the ALJ erred by failing to give controlling weight to an examining psychologist, Dr. David C. Richwerger.

        a. <u>Relevant Legal Standards</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See <u>Lester v. Chater</u>, 81 F.3d 821, 830-31

(9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

    b. Dr. David C. Richwerger's Assessment

At issue here is a December 8, 2009 psychological evaluation administered by examining psychologist, Dr. David C. Richwerger. AR 261-69. For the evaluation, Dr. Richwerger

reviewed plaintiff's medical records, which consisted solely of a medical source vendor question statement, which indicated allegations of attention deficit hyperactivity disorder ("ADHD"), depression and anxiety, and a Disability Report Form SSA 3368, which was completed by plaintiff. The rest of the evaluation consisted of plaintiff's self-reports and Dr. Richwerger's mental status examination.

As to plaintiff's self-reports, she stated that her chief complaints are depression and anxiety. She told Dr. Richwerger that she fears being alone, she cannot concentrate, she has memory problems, and she sometimes feels anxious. Although plaintiff had received outpatient psychiatric treatment at San Joaquin County Mental Health Treatment Center as a child for depression and ADHD, she denied ever being admitted to a psychiatric hospital and she denied taking any psychiatric medication. She also denied auditory or visual hallucinations. Additionally, while plaintiff did attempt suicide several years ago, she denied any current suicidal (or homicidal) ideations. But she did state that she sometimes hits herself in the face or on the head when she gets angry. Regarding her current level of functioning, plaintiff stated that she wakes intermittently at night and that her appetite is "okay." She does do household chores and is able to bath herself, but she does not run errands, shop, drive or cook. Plaintiff stated that she gets along fine with family and relatives, though she sometimes argued with her mom and she had a recent conflict with a friend.

Dr. Richwerger then conducted a mental status examination of plaintiff. He noted her to have a bruise over her left eye, which plaintiff said was self-inflicted, and scratches on her neck, which plaintiff says was caused by an argument with her friend. Dr. Richwerger determined that plaintiff had normal posture, gait, and mannerisms. Her verbal response time was within normal limits, her thought processes were clear and rational, and her understanding of instructions was within normal limits for simple tasks. Her memory and concentration skills were also deemed normal. On the Wechsler Adult Intelligence Scale, plaintiff scored at the lower end of the borderline range with a full-scale IQ of 74, though Dr. Richwerger noted that plaintiff's concentration and attention skills are a relative strength for her. On the Wechsler Memory Scale, Dr. Richwerger noted that plaintiff stopped in the middle of testing because she was not paying

any attention as she was thinking about the recent conflict with her friend, so the scores may be an underestimate. On the Bender-Gestalt-II test, plaintiff scored in the low average range of visual motor skills.

Following this testing, Dr. Richwerger diagnosed plaintiff as follows: Axis I – (1) Adjustment disorder with depressed mood, moderate; secondary to relationship conflict, (2) Rule out Bipolar 2, depressed; Axis II – (1) Borderline intellectual functioning, (2) Borderline personality traits; Axis III – As discussed; Axis IV – Employment related concerns, support system related concerns; and Axis V – GAF is 50.[2]

As to Dr. Richwerger's functional assessment of plaintiff, he determined that plaintiff appears to have marked impairment in her ability to perform detailed and complex tasks, though he found no impairment in plaintiff's ability to perform simple and repetitive tasks or to perform work activities without special supervision. He found moderate impairment in plaintiff's ability to perform work activities on a consistent basis, to complete a normal workday or workweek without interruption from a psychiatric condition, to understand and accept instructions from supervisors, and to interact with coworkers and the public. Lastly, he found slight impairment in plaintiff's ability to maintain regular attendance in the workplace.

        c.     <u>Analysis</u>

On review of the record, the ALJ found that plaintiff has the residual functional capacity to perform a wide range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot understand, remember, and carry out complex or detailed job instructions or job tasks and can have no more than occasional interaction with the general public. In so finding, the ALJ gave reduced weight to Dr. Richwerger's opinion "because the doctor did not adequately consider the claimant's subjective complaints. The doctor stated the claimant needs special supervision. However, the claimant's grandmother indicated that she is able to prepare light meals on her own." AR 17.

---

[2] The Global Assessment of Functioning (GAF) is a numeric scale of 0 through 100 used to rate the social, occupational and psychological functioning of adults. Diagnostic and Statistical Manual of Mental Disorders (Am. Psychiatric Ass'n 4th ed. 2000) ("DSM–IV"), at 32.

Plaintiff contends the ALJ erred in his treatment of Dr. Richwerger's opinion. First, plaintiff asserts that the ALJ failed to credit Dr. Richwerger's diagnoses and failed to discuss the doctor's GAF score. Second, plaintiff argues that Dr. Richwerger did in fact consider plaintiff's subjective complaints, as reflected in his notes, which are replete with reference to those complaints. Third, Dr. Richwerger's notes do not include a statement that plaintiff needed "special supervision." Rather, his notes indicate that plaintiff is able to bathe, dress, take care of her personal needs, and perform household chores. Lastly, plaintiff argues that the ALJ's reliance on a single statement made by plaintiff's grandmother, who noted that plaintiff is able to make light meals on her own, does not rise to the level of specificity and legitimacy needed to reject part or all of Dr. Richwerger's opinion.

The court turns first to plaintiff's argument that the ALJ erred in failing to adopt Dr. Richwerger's diagnoses (adjustment disorder with depressed mood, borderline intellectual functioning, and borderline personality traits). Plaintiff does not identify how a failure to credit these diagnoses affected the residual functional capacity given by the ALJ based on the impairments that the ALJ found severe (borderline intellectual functioning, anxiety, depression, and adjustment disorder with disturbance of mood secondary to the anxiety cluster). Accordingly, this argument is rejected.

Next, plaintiff argues that the ALJ erred in failing to discuss the GAF score given by Dr. Richwerger. A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, at 32 (Am. Psychiatric Ass'n 4th ed. 2000) ("DSM–IV"). "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1160 n.2 (9th Cir. 2012) (quoting Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)). GAF Scores range from 1–100. DSM–IV at 32. In arriving at a GAF Score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. DSM–

1    IV at 34.  A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe
2    obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or
3    school functioning (e.g., no friends, unable to keep a job)."  DSM–IV at 34.  A GAF score of 51–
4    60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic
5    attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends,
6    conflicts with peers or co-workers)."  Id.

7        Defendant is correct that the American Psychiatric Association recently dropped the GAF
8    scale from its multiaxial diagnostic system.  See Am. Psychiatric Assoc., Diagnostic and
9    Statistical Manual of Mental Disorders (5th ed. 2013).  But this change went into effect in 2013,
10   and the ALJ issued his decision in 2011.  In any event, the ALJ's failure to discuss the GAF,
11   standing alone, does not render the decision deficient.  See Howard v. Comm'r of Soc. Sec., 276
12   F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in
13   formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to
14   reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); Petree
15   v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. 2007) ("[A] low GAF score does not alone determine
16   disability, but is instead a piece of evidence to be considered with the rest of the record."); Ramos
17   v. Barnhart, 513 F. Supp. 2d 249, 261 (E.D. Pa. 2007) ("Clinicians use a GAF scale to identify an
18   individuals' [sic] overall level of functioning, and a lower score 'may indicate problems that do
19   not necessarily relate to the ability to hold a job.'" (citation omitted)); Baker v. Astrue, 2009 WL
20   279085, at *3 (C.D. Cal. Feb. 4, 2009) ("In evaluating the severity of a claimant's mental
21   impairments, a GAF score may help guide the ALJ's determination, but an ALJ is not bound to
22   consider it."); Florence v. Astrue, 2009 WL 1916397, at *6 (C.D. Cal.) ("[W]ithout more, the
23   ALJ's assessment of the medical record is not deficient solely because it does not reference a
24   particular GAF score."); 65 Fed. Reg. 50746, 50764–65 ("The GAF scale ... does not have a
25   direct correlation to the severity requirements in our mental disorder listings.").

26       Turning now to the gravamen of plaintiff's claim, the court finds it necessary to point out
27   that its reading of the ALJ's decision differs from the plaintiff's reading.  Specifically, while
28   plaintiff proceeds with the presumption that the ALJ gave reduced weight to the entirety of Dr.

Richwerger's opinion, a fair reading of the decision convinces the undersigned that the ALJ gave reduced weight only to that portion of Dr. Richwerger's opinion that referenced plaintiff's need for special supervision.[3] In rejecting that portion of the opinion, the ALJ did so for the reason that he did not think that the doctor "adequately consider[ed] the claimant's subjective complaints" and because plaintiff's grandmother described instances when plaintiff was able to perform tasks independently. See AR 16 ("This opinion is given reduced weight because the doctor did not adequately consider the claimant's subjective complaints. The doctor stated the claimant needs special supervision. However, the claimant's grandmother indicated that she is able to prepare light meals on her own.").

Assuming arguendo that the ALJ intended to give reduced weight to Dr. Richwerger's entire opinion, it is unclear how precisely plaintiff was harmed by the alleged error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Generally, errors are harmless where they are "inconsequential to the ultimate nondisability determination." Molina, 674 F.3d at 1115 (9th Cir. 2012) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)). Thus, for example, errors are harmless if the record shows that "the ALJ would have reached the same result absent the error" or "it was clear [the errors] did not alter the ALJ's decision." Id.

Dr. Richwerger's residual functional capacity assessment of plaintiff included a marked impairment in her ability to perform detailed and complex tasks and no impairment in her ability to perform simple and repetitive tasks. He also found moderate impairment in plaintiff's ability to perform work activities on a consistent basis, to complete a normal workday or workweek without interruption from a psychiatric condition, to understand and accept instructions from supervisors, and to interact with coworkers and the public. The ALJ's assessment of plaintiff is

---

[3] The undersigned agrees with plaintiff, however, that Dr. Richwerger's opinion did not actually include a limitation regarding the need for special supervision. Instead, it stated only that plaintiff "appears to have no impairment in her ability to perform work activities without special supervision." AR 268.

similar to Dr. Richwerger's in that the ALJ determined that plaintiff has the residual functional capacity to perform a wide range of work at all exertional levels but that she cannot understand, remember, and carry out complex or detailed job instructions or job tasks and she can have no more than occasional interaction with the general public. Plaintiff has not identified any material incongruity between the two assessments.

Even assuming further that fully crediting Dr. Richwerger's opinion would have somehow resulted in a more restrictive residual functional assessment, the court again finds no error in the ALJ's treatment of Dr. Richwerger's opinion. The ALJ began his analysis by finding that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. The ALJ compared plaintiff's statements regarding the restrictions on her daily activities with her testimony and the third-party statement regarding the activities that plaintiff could perform. This led the ALJ to find that plaintiff's complaints were not entirely credible because the record established that plaintiff had no problems with her personal care, she was capable of caring for pets at home, she was able to prepare simple meals for herself, and she helped with household chores. Plaintiff does not argue on appeal that this credibility finding was in error.[4]

Following his credibility finding, the ALJ gave significant weight to the opinion of consultative physician Robert Y. Hood, M.D., as presented in a December 21, 2009 Psychiatric Review Technique. See AR 273-86. There, Dr. Hood determined that plaintiff suffers from a mood disorder not otherwise specified, which results in a moderate degree of limitation in plaintiff's activities of daily living, ability to maintain social functioning, and ability to maintain

---

[4] In her opposition to the Commissioner's cross-motion for summary judgment, plaintiff asserts that she did not challenge the credibility finding because the ALJ failed to articulate any "specific, clear and convincing reasons" for rejecting her subjective complaints and testimony. See Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1992). But this is precisely the type of challenge that must be raised on appeal. Since plaintiff did not raise it in her moving papers, the court will not now entertain an argument regarding the ALJ's credibility determination. See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (holding that claimant waived issues because he did not raise those issues before the district court); Rojas v. Astrue, 2012 WL 3301025, at *3 n.1 (E.D. Wash. Aug. 13. 2012).

1  concentration, persistence, or pace.  Dr. Hood issued the following functional capacity
2  assessment: plaintiff could understand and remember simple and some detailed tasks, she could
3  carry out simple tasks for a normal workweek, she is to have limited public contact, and she has
4  no significant limitations.  The ALJ gave this opinion significant weight because it was rendered
5  by a medical expert, it was consistent with the other objective medical evidence, and it was
6  consistent with plaintiff's alleged activities of daily living.

7  Plaintiff argues that the ALJ erred in giving greater weight to Dr. Hood's opinion than to
8  Dr. Richwerger's opinion.  Initially, the court agrees with plaintiff that the first reason relied on
9  by the ALJ – namely, that Dr. Hood is a medical expert – is an insufficient basis for crediting the
10 opinion of one doctor over another since both doctors are medical experts.[5]  Regardless, the
11 ALJ's two remaining reasons constitute specific and legitimate reasons for crediting the opinion
12 of the consulting physician over the examining physician.  The court has already discussed the
13 ALJ's credibility determination, which was sufficient to give reduced weight to Dr. Richwerger's
14 opinion.  See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)  ("[A]n opinion of
15 disability premised to a large extent upon the claimant's own accounts of his symptoms and
16 limitations may be disregarded, once those complaints have themselves been properly
17 discounted.").  While plaintiff correctly notes that both Dr. Hood and Dr. Richwerger relied on
18 plaintiff's subjective complaints, the ALJ was entitled to give more weight to the opinion of the
19 physician who considered those complaints critically.  See Fair v. Bowen, 885 F.2d 587, 605 (9th
20 Cir. 1989).

21 In addition, the ALJ pointed to the limited medical record that provided no objective basis
22 for plaintiff's allegations of disabling symptoms and limitations.  Although plaintiff refers to
23 those portions of the record that evidence plaintiff's low GAF scores and treatment for
24 depression, none of these records establish limitations on plaintiff's daily functioning or ability to

---

[5] It appears, though, that this point was actually made to contrast the weight given to Dr. Hood's opinion with the lesser weight given to the opinion of plaintiff's grandmother, whose statement was discussed immediately prior to discussion of Dr. Hood's testimony and whom the ALJ identified as not an acceptable medical source.  See AR 16.  So interpreted, there was no error.

work beyond those assessed by the ALJ. 65 Fed. Reg. 50746, 50764–65 ("The GAF scale . . .

work beyond those assessed by the ALJ. 65 Fed. Reg. 50746, 50764–65 ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings."). Accordingly, the court finds no error.[6]

## 2. Third Party Statement

Plaintiff next argues that the ALJ erred in failing to credit and properly characterize plaintiff's grandmother's third-party statement.

### a. Relevant Legal Standards

Generally, in addition to medical sources, the ALJ may consider statements from family, friends and others regarding the severity of a plaintiff's impairments and how the impairments impact his ability to work. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06–3p, 2006 WL 2329939 at *5. Lay witness evidence is competent evidence and cannot be disregarded without providing specific reasons germane to each witness. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

### b. The Third-Party Statement

On November 25, 2009, plaintiff's grandmother, Myrna L. Henry, completed a Function Report – Adult – Third Party in support of plaintiff's application for SSI benefits. AR 152-59. In this report, Ms. Henry noted that plaintiff shares the responsibility for taking care of the family pet with plaintiff's mother; that plaintiff has no problem caring for her personal needs; that she can prepare meals for herself, such as cold and hot sandwiches and canned soup, but "no

---

[6] The role of this court is limited. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Thomas, 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.

complete coures [sic] meals, unless helping her mother"; and that she shares responsibility for chores around the house with her mother. Ms. Henry noted that plaintiff sometimes does not go outside because of anxiety, depression or stress. As for plaintiff's ability to, for example, pay bills and count change, Ms. Henry noted that she is "not sure on counting change – she has no income," and that she cannot say if plaintiff can handle money since she has no income to spend. Ms. Henry also noted that plaintiff does not have any hobbies or social activities, which Ms. Henry attributes to "an illness" that plaintiff was born with causing her depression, stress and anxiety. Regarding plaintiff's social activities, Ms. Henry indicated that plaintiff visits family and friends and cousins, but she does have to be reminded sometimes to go places and she does sometimes need someone to accompany her "if it's to[o] far for walking or the weather is to[o] hot or raining – storming." Ms. Henry noted that plaintiff's condition affects her ability to remember, to complete tasks, to concentrate, to understand, to follow instructions ("sometimes"), and to get along with others. Per Ms. Henry, plaintiff's ability to handle changes in routine depends on her condition. In a section for additional remarks, Ms. Henry wrote that plaintiff was rejected by family members since birth due to her hyperactivity; that she has struggled all her life and has a hard time with concentration, memory, and completing tasks, getting along with "some" people; and that "due to her illnesses [and] conditions, plaintiff will never be able to fully support herself."

    c. <u>Analysis</u>

 In the June 17, 2011 decision, the ALJ summarized Ms. Henry's statement as follows:

> Myrna L. Henry, the claimant's grandmother, completed a Third Party Function Report on behalf of the claimant. Ms. Henry noted the claimant can care for her pet and has no problems with her personal care. She also pointed out that the claimant can prepare cold and hot sandwiches and canned soup. In addition, the claimant can also clean the house and do laundry according to Ms. Henry. She also stated that the claimant does not manage her finances because she has no money. While a [sic] Ms. Henry is not considered an acceptable medical source within the regulatory definition, I find the opinion persuasive.

AR 16.

////

Plaintiff contends the ALJ erred by failing to provide a complete summary of Ms. Henry's opinion. She asserts that a fair reading of Ms. Henry's statement reveals a more troubled ability to cope with plaintiff's illness than the summary provided by the ALJ. For example, although the ALJ noted that plaintiff can prepare certain meals and can perform household chores, Ms. Henry's report indicates that plaintiff's mother helps her.

Assuming without deciding that the ALJ erred in failing to properly characterize Ms. Henry's statement, the court finds any error to be harmless. In Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2010), the Ninth Circuit held that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." 674 F.3d at 1117. In that case, the Court of Appeals found that "[a]lthough the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as [the claimant's] own testimony, and the ALJ's reasons for rejecting [that] testimony appl[ied] with equal force to the lay testimony." Id. at 1122.

As previously discussed, plaintiff failed to challenge the ALJ's credibility determination as to her subjective complaints. Having waived that argument, the court finds that the ALJ's conclusion that plaintiff's allegations of functional limitations are not entirely credible is error-free. Here, the limitations described by Ms. Henry mirror those described by plaintiff. Since the ALJ's reasons for discrediting plaintiff's statements apply with equal force to Ms. Henry's statement, the court finds no error.

CONCLUSION

Because the undersigned finds no error in the ALJ's reasoning and analysis, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment is denied;

    2. The Commissioner's cross-motion for summary judgment is granted; and

////

3. The Clerk of the Court is directed to enter judgment for the Commissioner.

DATED: December 5, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE